UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

JOHN SMITH,                                        :

                    Plaintiff,                     :

                                                   :          OPINION AND ORDER

                    v.                             :

                                                   :          08 Civ. 2822 (SAS)

LOREN A. GRAYER, as Warden of the                  :
Federal Detention Center Miami,                    :
DOCTOR LUIS GINART,  as Clinical                   :
Director of the Federal Detention Center           :
Miami, HARLEY LAPPIN, as Director                  :
of the Federal Bureau of Prisons, and              :
JAE H. RO, M.D.,  of Westchester                   :
Medical Center,                                    :
                                                   :
                    Defendants.                    :
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3|16|09

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

John Smith, presently incarcerated and proceeding *pro se*, brings this

action against Dr. Jae H. Ro of the Westchester Medical Center ("WMC"), and

federal defendants Loren A. Grayer, Warden of the Federal Detention Center in

Miami, Florida ("FDC Miami"), Dr. Luis Ginart, Clinical Director of FDC Miami

and Harley Lappin, Director of the United States Bureau of Prisons ("BOP"),

claiming violations of his rights under federal law.[1]  Though Smith brings suit

against all the defendants pursuant to 42 U.S.C. § 1983, the court will liberally

construe his claims against federal defendants under *Bivens v. Six Unknown*

*Federal Narcotics Agents*, 403 U.S. 388 (1971).  Specifically, Smith asserts in his

Amended Complaint that defendants were deliberately indifferent to his medical

needs.[2]  Defendants now move to dismiss the Amended Complaint pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated

below, defendants' motion is granted.

## II.    BACKGROUND[3]

Smith is a prisoner who was held in both federal and state custody at

times relevant to the Amended Complaint.[4]  Smith was incarcerated at FDC Miami

on July 28, 2006, whereupon he informed the medical staff of his age (74 years),

---

[1]      Nurse Irene Anokute of Westchester County Jail is not a defendant in this case.  Although she was named as a defendant in the original Complaint, she was not named as defendant in the Amended Complaint.  Smith confirmed that Anokute is not a defendant.  *See* Plaintiff's Reply to Memorandum of Law in Support of Jae H. Ro, M.D. and Irene Anokute's Motion to Dismiss at 2.

[2]      *See* Complaint ("Compl.") § 3.

[3]      The following recitation of facts is drawn from the Amended Complaint and presumed to be true for the purpose of this motion.

[4]      *See* Compl. § II.B.

his advanced heart disease and his permanent pacemaker.[5]  Smith "was placed in general confinement where he was forced to walk up and down several flights of stairs to eat his meals."[6]   Smith states that he tried to see a cardiologist and implies that he was not successful.[7]  Smith states that although he repeatedly requested service for his pacemaker, it was never serviced during the approximately 10.5 months that he was at FDC Miami.[8]  Smith additionally complains that (1) the FDC Miami medical staff did not check his "prostate levels;" (2) he was retaining water "detrimental to [his] congestive heart failure," and (3) his insulin levels were being monitored too infrequently.[9]

On May 12, 2007, Smith began his incarceration at the Westchester County Jail ("WCJ").[10]  Upon arrival, Smith "informed the Medical Department that his pacemaker had not been serviced in a year and that he was experiencing a

---

[5]     *See id.* at 2 (Smith suffers from atrial fibrillation, hypertension, aortic stenosis and more. He received a triple coronary artery bypass graft in 2006.).

[6]     *Id.*

[7]     *See id.*

[8]     *See id.*

[9]     *See id.*

[10]    *See id.*

3

tightness and pain in his chest."[11]  Six weeks later, he was sent to the hospital.[12]

Originally, Smith was scheduled to undergo a stress test, but "one of the senior

doctors" determined this procedure unnecessary and scheduled Smith for an

"aortic cauterization."[13]  On August 17, 2007, Smith began experiencing chest

pains of increasing severity.[14]  On August 23, 2007, Smith received his aortic

catheterization at WMC whereupon Dr. Ro informed Smith that he needed open

heart surgery.[15]  Following an endoscopy, however, Dr. Ro determined that heart

surgery was too risky and prescribed medication instead.[16]  On August 29, 2007,

Smith underwent a TEE.[17]  The next day, Smith received new medications at

which point he "started experiencing severe chest and back pain."[18]  Smith

reported this pain to the nurse on duty, who explained that Smith's pain stemmed

---

[11]     *Id.*

[12]     *See id.*

[13]     *See id.* Smith likely means a diagnostic aortic catheterization.

[14]     *See id.*

[15]     *See id.*

[16]     *See id.*

[17]     *See id.* A TEE likely refers to the Trans-Esophogeal Echocardiogram
technique for visualizing the heart.

[18]     *Id.* at 3.

4

from the new medication and his recent pacemaker adjustment.[19]  On August 31,

2007, Smith returned to WCJ where he told the nurse in the booking area that he

was in great pain.[20]  A few hours later, Smith was "ordered to walk to the

Infirmary Unit."[21]  Smith requested a wheelchair but an officer ordered him to

walk.[22]  Soon thereafter, Smith collapsed.[23]  An ambulance carried Smith back to

WMC.[24]  In the ambulance, Smith's "heart stopped and he had to be

resuscitated."[25]  Smith had an adverse reaction to the medication and eventually

underwent open heart surgery on September 10, 2007.  He returned to WCJ five

days later.[26]

## III.   LEGAL STANDARDS

### A.   Failure to State a Claim

---

[19]   *See id.*

[20]   *See id.*

[21]   *Id.*

[22]   *See id.*

[23]   *See id.*

[24]   *See id.*

[25]   *Id.*

[26]   *See id.*

5

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "'accept as true all of the factual allegations contained in the complaint'"[27] and "draw all reasonable inferences in the plaintiff's favor."[28] Moreover, as Smith is appearing *pro se*, this Court will "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s].'"[29] A complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'"[30] in order to survive a motion to dismiss. Although the complaint need not provide "detailed factual allegations,"[31] it must nonetheless "amplify a claim with some factual allegations . . . to render

---

[27] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)).

[28] *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[29] *Weixel v. Board of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

[30] *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). *Accord Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam) (noting that plaintiffs must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'") ( quoting *Twombly*, 550 U.S. at 555).

[31] *Twombly*, 550 U.S. at 555.

6

the claim *plausible*."[32]  "[B]ald assertions and conclusions of law will not suffice."[33]

## B.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") mandates that a prisoner exhaust all administrative remedies before bringing an action in federal court regarding prison conditions.[34]  Failure to exhaust is an absolute bar to an inmate's action in federal court:  "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."[35]  Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time of the initial filing, given that "[s]ubsequent exhaustion after suit is filed . . . is

---

[32]     *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

[33]     *Law Offices of Curtis V. Trinko, LLP v. Bell Atl. Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (citation omitted).

[34]     *See* 42 U.S.C. § 1997e(a) (2006) (providing that: "No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Porter v. Nussle,* 534 U.S. 516, 516 (2002); *Booth v. Churner*, 532 U.S. 732, 739 (2001).

[35]     *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir. 2001) (quotation marks and citation omitted, emphasis in original).

7

insufficient."[36]  Moreover, the exhaustion of administrative remedies must be *proper* — that is, in compliance with a prison grievance program's deadlines and other procedural rules — in order to suffice.[37]  The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[38]  The Second Circuit has explained that "'[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought,' . . . does not constitute proper exhaustion."[39]  Further, "notice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance' and '[t]he prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules.'"[40]

---

[36]    *Id.*

[37]    *See Woodford v. Ngo*, 548 U.S. 81, 90-92 (2006).

[38]    *Porter*, 534 U.S. at 532.

[39]    *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (quoting *Braham v. Clancy*, 425 F.3d 177, 184 (2d Cir. 2005) and citing *Woodford*, 548 U.S. at 94-95) (finding plaintiff "cannot satisfy the PLRA's exhaustion requirement solely by filing two administrative tort claims, or by making informal complaints to the MDC's staff").

[40]    *Id.* (citing *Woodford*, 548 U.S. at 95).

Under the PLRA, the general rule is that claims of deliberate

indifference to medical needs are properly dismissed when plaintiff has not

completed "exhaustion of the four-step administrative procedures set forth in the

BOP's Administrative Remedy Program."[41]  These four steps include: "(1)

attempting informal resolution with prison staff; (2) submitting a formal written

"Administrative Remedy Request" to the warden within twenty days of the

triggering event; (3) appealing the warden's decision to the appropriate regional

director within twenty days of the formal request being deni[ed]; and (4) appealing

the Regional Director's decision to the BOP General Counsel's office within thirty

days."[42]  However, when the prisoner plausibly alleges special circumstances that

caused the prisoner's failure to comply with the grievance procedures, the court

may waive the exhaustion requirement.[43]  "The special circumstances inquiry

---

[41]     *Owusu v. Federal Bureau of Prisons*, No. 02 Civ. 0915, 2003 WL
68031, at *2 (S.D.N.Y. Jan. 7, 2003).

[42]     *Id.* at *2 n.2 (citing 28 C.F.R. §§ 542.13(a), 542.14(a), 542.15(a)).

[43]     *See, e.g.*, *Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006).
Following *Woodford,* the Second Circuit questioned whether exhaustion
exceptions such as special circumstances still applied.  *See Ruggiero v. County of
Orange*, 467 F.3d 170, 176 (2d Cir. 2006).  District courts, however, have
continued to apply exceptions.  *See, e.g.*, *Amador v. Superintendents of Dept. of
Corr. Servs.*, No. 03 Civ. 0650, 2007 WL 4326747, at *6-8 (S.D.N.Y. Dec. 4,
2007) (considering *Ruggiero*); *Jones v. Fisher*, No. 07 Civ. 7589, 2008 WL
3174510 (S.D.N.Y. Aug. 7, 2008) (ignoring *Ruggiero*).

9

'must be determined by looking at the circumstances which might understandably

lead usually uncounselled prisoners to fail to grieve in the normally required

way.'"[44] "Findings of special circumstances have been primarily established

where plaintiffs acted pursuant to reasonable interpretations of the regulations,

thus preventing exhaustion."[45]

### C.    Deliberate Indifference to Serious Medical Needs

The Eighth Amendment to the United States Constitution prohibits

the infliction of cruel and unusual punishment on prisoners. In *Estelle v.*

*Gamble*,[46] the Supreme Court held that "deliberate indifference to serious medical

needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . .

proscribed by the Eighth Amendment."[47]

---

[44]     *Jones*, 2008 WL 3174510, at \*4 (quoting *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004)).

[45]     *Winston v. Woodward*, No. 05 Civ. 3385, 2008 WL 2263191, at \*10 (S.D.N.Y. May 30, 2008).

[46]     429 U.S. 97 (1976).

[47]     *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). *Accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . .") (quotation marks and citations omitted).

10

To sustain a claim of deliberate indifference to medical needs, a plaintiff must satisfy a two-part test containing both an objective and a subjective component. The objective component requires the alleged deprivation to be sufficiently serious.[48] Accordingly, "only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation."[49] This standard contemplates a "condition of urgency, one that may produce death, degeneration, or extreme pain."[50] A serious medical need arises where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[51]

To satisfy the subjective prong of the deliberate indifference test, prison officials must have acted with a sufficiently culpable state of mind, *i.e.*,

---

[48]     *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'").

[49]     *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

[50]     *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)).

[51]     *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks and citation omitted).

11

deliberate indifference.[52]   "Deliberate indifference is 'a state of mind that is the

equivalent of criminal recklessness.'"[53]   Plaintiff must therefore show that prison

officials intentionally denied, delayed access to, or intentionally interfered with

necessary medical treatment.[54]   "[T]he subjective element of deliberate

indifference 'entails something more than mere negligence . . . [but] something

less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result.'"[55]   Accordingly, recklessness can satisfy the

deliberate indifference standard where the official "knows that inmates face a

substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it."[56]   However, "[m]edical malpractice does not

---

[52]     *See Farmer*, 511 U.S. at 834.

[53]     *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting
*Hathaway*, 99 F.3d at 553).

[54]     *See Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found
liable under the Eighth Amendment for denying an inmate humane conditions of
confinement unless the official knows of and disregards an excessive risk to
inmate health or safety; the official must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm exists, and he must
also draw the inference.").

[55]     *Hathaway*, 99 F.3d at 553 (quoting *Farmer*, 511 U.S. at 835) (ellipsis
and brackets in original).

[56]     *Farmer*, 511 U.S. at 847.

12

become a constitutional violation merely because the victim is a prisoner."[57]

Similarly,

> Disagreements over medications, diagnostic techniques (e.g., the
> need for X-rays), forms of treatment, or the need for specialists or
> the timing of their intervention, are not adequate grounds for a
> Section 1983 claim.  These issues implicate medical judgments
> and, at worst, negligence amounting to medical malpractice, but
> not the Eighth Amendment.[58]

## D.   Personal Involvement

It is "the government's obligation to provide medical care for those

whom it is punishing by incarceration.  An inmate must rely on prison authorities

to treat his medical needs; if the authorities fail to do so, those needs will not be

met."[59]  "[I]n [deliberate indifference] actions, a plaintiff must allege that the

individual defendant was personally involved in the constitutional violation."[60]  A

---

[57]    *Estelle*, 429 U.S. at 106.

[58]    *Sonds v. Saint Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d
303, 312 (S.D.N.Y. 2001) (citing *Estelle*, 429 U.S. at 97). *Accord Candelaria v.
Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *7 (S.D.N.Y. Mar. 1, 1996) ("A
difference of opinion between an inmate and medical professionals . . . as to the
appropriate course of treatment does not in and of itself constitute an Eighth
Amendment violation.").

[59]    *Estelle*, 429 U.S. at 103.

[60]    *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006).

13

supervisory defendant's personal involvement is established when evidence shows that he:

> (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring.[61]

Informal communications do not satisfy the second prong.[62]

## IV.   DISCUSSION[63]

### A.   Smith Did Not Exhaust His Administrative Remedies

Smith did not grieve his complaints to the highest level of administrative review, and therefore, he did not exhaust his administrative remedies.  Smith admits as much in his Complaint, saying "Plaintiff did not appeal the decision of Defendant Grayer because Plaintiff believed that [the defendants]

---

[61]     *Id.* at 496-97.

[62]     *See, e.g., Sealey v. Giltner*, 116 F.3d 47 (2d Cir. 1997) (two letters were insufficient); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363-64 (S.D.N.Y. 2002) (listing cases "holding that an official may not be held liable for ignoring an inmate's letter of complaint").

[63]     Defendants suggest that the court dismiss the federal defendants from the action because the court does not have personal jurisdiction over the federal defendants.  The court does not need to reach this issue, however, because the Complaint is fully dismissed on the merits.

14

were going to take care of him"[64] because Grayer assured Smith his needs would be met.[65]  Smith, filed his original Complaint on March 18, 2008, which demonstrates he did not believe Grayer.  Given that fact, Smith should have completed the grievance process.

Construing the Complaint broadly, Smith alleges that his heart disease is a "special circumstance" sufficient for allowing non-exhaustion "because of the continued harm, pain and suffering that the Plaintiff must endure on a daily basis."[66]   There is no need, however, to interrupt or expedite the grievance process because Smith's surgery was apparently successful.[67] Tellingly, Smith does not seek any immediate medical relief for his current condition other than being permitted to see his pre-arrest cardiologist.[68] Additionally, Smith's heart disease is not an excuse for failing to grieve in the

---

[64]    Compl. § IV.E.3.

[65]    *See id.* § IV.E.2.

[66]    *Id.* § IV.E.3.

[67]    This analysis may be different where the grievance process must be bypassed to avoid a likely and serious near-term injury.  For example, Smith may have been able to bypass or expedite the grievance process prior to his heart attack had he made plausible allegations about lack of pacemaker service and being forced to use the stairs.

[68]    *See* Compl. § V.

15

required way. Smith does not plausibly allege that his disease affected his ability

to reasonably interpret grievance regulations.

**B.      Smith Does Not State a Cognizable Deliberate Indifference Claim**

Assuming, arguendo, that Smith satisfied the grievance procedures,

Smith's claim of the federal defendants' deliberate indifference to his medical

needs still fails for two reasons. *First,* Smith does not plausibly allege that

defendants or the FDC Miami staff were deliberately indifferent to his medical

needs. Smith contends that while at FDC Miami he was forced to use stairs to eat

his meals because he was placed in general confinement. This assertion is a

conclusory statement; he does not explain how he was "forced" to use the stairs.

Even if Smith did not have a stair-free route to his meals, he does not state how

needing to use the stairs caused him injury (*e.g.*, that using the stairs caused him

discomfort or overexertion, or that the prison staff made him walk the steps at an

unhealthy pace). Smith also contends that his pacemaker never being serviced

demonstrates deliberate indifference to his medical needs. This assertion is also

inadequate. Smith does not indicate how often his pacemaker must be checked, he

was at FDC Miami for under one year and his pacemaker was checked and

adjusted after he arrived at WCJ, likely between August 27-30, 2007.[69] *Second*,

---

[69]      *See id*. at 2-3.

the federal defendants are supervisors. Smith must therefore allege their personal involvement, which he did not. Additionally, Smith does not provide any facts or evidence from which personal involvement could be established: (1) Smith does not allege that the federal defendants directly participated in providing inadequate medical treatment; (2) Smith does not allege formally communicating with the federal defendants; (3) Smith does not allege a custom or policy of medical indifference; (4) Smith does not suggest that the federal defendants were grossly negligent in supervising the medical staff; and (5) Smith does not allege that the federal defendants had information that would have suggested to them that Smith's constitutional rights were being violated.

Smith's claim of deliberate indifference to his medical needs also fails against Dr. Ro. After Dr. Ro performed an aortic catheterization on Smith, he determined that Smith required surgery. Following an endoscopy, Dr. Ro determined that heart surgery was too risky and that medication would be a safer treatment. While Smith's heart stopped beating one week later, this does not establish that Dr. Ro caused Smith's heart attack nor that Dr. Ro was indifferent to the possibility of a heart attack. The fact that Dr. Ro changed his mind as to Smith's proper course of treatment following an endoscopy shows that Dr. Ro was

17

not indifferent; to the contrary, such further analysis demonstrates Dr. Ro's concern for Smith's medical needs.

## V.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this motion and this case (docket nos. 22, 30).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 16, 2009

18

## -Appearances-

**Plaintiff (pro se):**

John Smith
Reg. No. 185856
Bellamy Creek Correctional Facility
1727 Bluewater Highway
Ionia, MI 48846

**For Defendants Grayer, Ginart and Loppin:**

Emily E. Daughtry
Assistant United States Attorney
86 Chambers St., 3rd Floor
New York, NY 10007
(212) 637-2800 x1579

**For Defendant Dr. Ro:**

Justin D. Pruyne
Assistant County Attorney
148 Martine Ave, Rm. 600
White Plains, NY 10601
(914) 995-3132